Tina Wolfson, SBN 174806
*twolfson@ahdootwolfson.com*
Robert Ahdoot, SBN 172098
*rahdoot@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
1016 Palm Avenue
West Hollywood, California 90069
Tel: (310) 474-9111; Fax: (310) 474-8585

Daniel K. Bryson, N.C. Bar No.: 15781*
Dan@wbmllp.com
J. Hunter Bryson, N.C. Bar No.: 50602*
Hunter@wbmllp.com
WHITFIELD BRYSON & MASON
PO Box 12638
Raleigh, NC 27605
Telephone: 919-600-5000
Facsimile: 919-600-5035

*Pro hac vice* applications forthcoming

Counsel for Plaintiff,
JOHN MILLIGAN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MILLIGAN, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>FCA US LLC, a Delaware limited liability company; FIAT CHRYSLER AUTOMOBILES N.V., a corporation organized under the laws of the Netherlands; ROBERT BOSCH GMBH, a corporation organized under the laws of Germany; and ROBERT BOSCH LLC, a Delaware limited liability company,<br><br>     Defendant. | Case No. 1:17-cv-01152<br><br><br>**CLASS ACTION COMPLAINT AND COMPLAINT FOR DAMAGES**<br>**(Demand for Jury Trial)** |

Plaintiff John Milligan ("Plaintiff"), acting individually and on behalf of all others similarly situated, brings this action for damages and equitable relief against Defendants FCA US LLC and Fiat Chrysler Automobiles N.V. (together, "Fiat Chrysler" or "Fiat") and Defendants Robert Bosch GmbH and Robert Bosch LLC (together, "Bosch") (collectively, "Defendants"):

## NATURE OF THE CASE

1.    Climate change and health hazards caused by air pollution are two of the most pressing concerns for the survival of life on earth. They are global problems and global worries. Almost everything these days is looked at for its "green" potential and its possible contribution to emissions and climate change. People are concerned.

2.    Fiat Chrysler Automobiles N.V., one of the world's largest automakers, and all of its subsidiaries, including FCA US LLC (formerly known as Chrysler Group, LLC), and Bosch, the world's leading vehicle emissions software and hardware designer and manufacturer, jointly manipulated that concern and duped many consumers who were trying to make eco-friendly choices into buying light trucks that were, in fact, emitting significant levels of environmental pollutants every day.

3.    The vehicles that are the subject of this case use the 3.0 liter "EcoDiesel" engine designed by VM Motori, a wholly-owned subsidiary of Fiat Chrysler Automobiles, N.V. That engine is an option in Fiat Chrysler vehicles, including certain 2014-2016 Jeep Grand Cherokees and Dodge Ram 1500 trucks sold in the United States.

4.    Fiat Chrysler Automobiles N.V. and its subsidiaries misleadingly marketed these vehicles as "EcoDiesels"—supposedly "cleaner than gas vehicles." In reality, the vehicles produce harmful pollutants in excess of California and national emissions standards, as well as in excess of what a reasonable consumer would expect from an "eco" vehicle.

5.    To add insult to injury, Fiat charged *more* for these defective trucks and SUVs than its other competing models. The upcharge gave consumers the false impression that they were investing in clean emissions and environmental responsibility when, in fact, the opposite was true.

6.    Plaintiff, individually and on behalf of a class of California residents who purchased or leased Class Vehicles ("Class Members"), as well as on behalf of a nationwide RICO class, brings this

1

action to redress Fiat Chrysler's and Bosch's unfair business practices and fraudulent misrepresentations about the emissions compliance and general environmental-friendliness of more than 100,000 U.S. vehicles in the 2014 to 2016 model years.

7.    Since at least 2014, Fiat and Bosch have collaborated to create and use specially-developed devices and software to evade complying with United States emissions standards for certain models of Fiat's diesel vehicles.  These tools are designed to fool testing devices and conceal the fact that certain Fiat models emitted nitrogen oxides ("NOx") at levels much higher than what was legally permitted under normal driving conditions. NOx is a known hazardous pollutant and greenhouse gas, and has been linked to numerous debilitating respiratory diseases.

8.    More specifically, Fiat Chrysler included in its "EcoDiesel" vehicles several Auxiliary Emissions Control Devices (AECDs)—devices that "reduce the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use" (40 C.F.R. § 86.1803-01)—that were designed to significantly reduce the efficacy of the NOx reduction systems during real world driving conditions. Although required by both state and federal law to disclose to regulatory agencies any AECDs in its vehicles, Fiat Chrysler made no such disclosures. Much like the Volkswagen diesel vehicles that have been the subject of an international scandal and much litigation, this resulted in vehicles producing compliant levels of emissions during testing conditions while spewing pollutants during everyday use. This allowed Fiat Chrysler to conceal the vehicles' true NOx emissions levels and dupe both regulators and consumers.

9.    As part of Fiat Chrysler's media campaign designed to capitalize on public concern over climate change, Fiat Chrysler bombarded the TV airwaves, the Internet, and print with advertisements that misleadingly touted the fuel economy, power, and "green" credentials of Fiat Chrysler's supposedly "clean" EcoDiesel vehicles. Fiat Chrysler claimed that the vehicles met or exceeded federal emissions standards when they did not and Fiat Chrysler knew they did not. Instead, the vehicles were built with sophisticated software designed to cheat environmental pollution standards.

10.    Fiat Chrysler's scheme went undetected for at least two years, and might have continued unabated had the Volkswagen emissions scandal not come to light. In the wake of the Volkswagen emissions scandal, regulators looked at all diesel vehicles with heightened scrutiny.

11.    On January 12, 2017, the Environmental Protection Agency (EPA) issued a Notice of Violation for Model Year 2014-2016 diesel light-duty vehicles (Dodge Ram and Jeep Grand Cherokee) (the "NOV"). The NOV identified eight AECDs that had not been disclosed by Fiat Chrysler and stated that those AECDs, either alone or in some combination, functioned as a "defeat device":

> Operation of one or more of the eight undisclosed AECDs, either alone or in combination with each other, results in excess emissions of nitrogen oxides (NOx) under various operating conditions that may reasonably be expected to be encountered in normal vehicle operation and use.

EPA Notice of Violation dated January 12, 2017.

12.    On the same day, the California Air Resources Board ("CARB") issued a Notice of Violation to the same entities relating to the AECDs in their 3.0 liter "EcoDiesel" vehicles.

13.    The chart below indicates which vehicles (the "Class Vehicles") have been impacted by Fiat Chrysler's deliberate deception. Additional investigation may lead to the discovery of other models and years impacted by the deceptive scheme.

| Model Year | EPA Test Group | Make and Model (s) |
|---|---|---|
| 2014 | ECRXT03.05PV | Dodge Ram 1500 |
| 2014 | ECRXT03.05PV | Jeep Grand Cherokee |
| 2015 | FCRXT03.05PV | Dodge Ram 1500 |
| 2015 | FCRXT03.05PV | Jeep Grand Cherokee |
| 2016 | GCRXT03.05PV | Dodge Ram 1500 |
| 2016 | GCRXT03.05PV | Jeep Grand Cherokee |

14.    Every Class Vehicle was sold to consumers based on knowingly false representations about its true environmental friendliness, fuel efficiency, and performance ability, as a result of Fiat's and Bosch's illegal conduct.

15.     Plaintiff and Class members were induced to purchase Class Vehicles based on deliberate misrepresentations and omissions by Fiat Chrysler in its advertising, public statements, and marketing information. These were material factors in inducing Plaintiff and Class Members to purchase the Class Vehicles. Fiat Chrysler's deceptive scheme caused many consumers worldwide to buy the Class Vehicles based on false claims of the vehicle's characteristics. Plaintiff and Class Members would not have purchased or leased the Class Vehicles or would have paid much less had they known the truth about them.

## THE PARTIES

### Plaintiff John Milligan

16.     In July 2013, Plaintiff John Milligan purchased a Model Year 2014 Dodge Ram 1500 with the 3.0 liter "EcoDiesel" engine. John purchased the Ram specifically because it was advertised as being a "clean," environmentally-friendly vehicle that also provided excellent power, performance, and fuel mileage. John researched both the Ram 1500 and competing trucks before choosing the Ram 1500. John would not have purchased the Dodge Ram 1500 but for Fiat Chrysler's representations regarding its "clean" emissions characteristics.

### The Fiat Chrysler Defendants

17.     Defendant FCA US LLC ("FCA") is an American automotive limited liability company. It is organized under the laws of Delaware with its principal place of business and headquarters in Auburn Hills, Michigan. FCA is wholly owned by defendant Fiat Chrysler Automobiles N.V., a holding company. Until the end of 2014, FCA went by the name Chrysler Group, LLC.

18.     Defendant Fiat Chrysler Automobiles N.V. is a Dutch corporation headquartered in London, United Kingdom. FCA and Fiat Chrysler Automobiles N.V. are collectively referred to as "Fiat Chrysler" or "Fiat."

19.     Fiat Chrysler is a motor vehicle manufacturer and a licensed distributor of   new Chrysler, **Fiat Chrysler locations in North America** Dodge, Jeep, and Ram vehicles. The Chrysler brand is one of the "Big Three" American automobile brands. Fiat Chrysler engages in commerce by distributing and selling new and unused passenger cars and motor vehicles under its Chrysler, Dodge,

4

Jeep, and Ram brands. Other major divisions of Fiat include Mopar, its automotive parts and accessories division, and SRT, its performance automobile division. As of 2015, Fiat Chrysler is the seventh largest automaker in the world by unit production.

20.     Fiat Chrysler, through its various entities, designs, manufactures, markets, distributes, and sells automobiles in California and multiple other locations in the U.S. and worldwide. Fiat Chrysler and/or its agents designed, manufactured, and installed the EcoDiesel engine systems in the Class Vehicles. Fiat Chrysler also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles.



**The Bosch Defendants**

21.     Defendant Robert Bosch GmbH is a German multinational engineering and electronics company headquartered in Gerlingen, Germany. Robert Bosch GmbH is the parent company of Robert Bosch LLC. Robert Bosch GmbH, directly and/or through its North-American subsidiary Robert Bosch LLC, at all material times, designed, manufactured, and supplied elements of the defeat device to Fiat Chrysler for use in the Class Vehicles. Bosch GmbH is subject to the personal jurisdiction of this Court because it has availed itself of the laws of the United States through its management and control over Bosch, LLC, and over the design, development, manufacture, distribution, testing, and sale of many thousands of the defeat devices installed in the Class Vehicles sold or leased in the U.S.

CLASS ACTION COMPLAINT

22.　　Defendant Robert Bosch LLC is a Delaware limited liability company with its principal place of business located at 38000 Hills Tech Drive, Farmington Hills, Michigan 48331. Robert Bosch LLC is a wholly-owned subsidiary of Robert Bosch GmbH. Robert Bosch LLC, directly and/or in conjunction with its parent Robert Bosch GmbH, at all material times, designed, manufactured, and supplied elements of the defeat device to Fiat Chrysler for use in the Class Vehicles.

23.　　Both Robert Bosch GmbH and Robert Bosch LLC (collectively "Bosch" or the "Bosch defendants") operate under the under the umbrella of the Bosch Group, which encompasses some 340 subsidiaries and companies. The Bosch Group is divided into four business sectors: Mobility Solutions (formerly Automotive Technology), Industrial Technology, Consumer Goods, and Energy and Building Technology. The Mobility Solutions sector, which supplied parts to the automotive industry, and its Diesel Systems division, which develops, manufactures, and supplies diesel systems, are particularly at issue here and include the relevant individuals from both Bosch defendants. Regardless of whether an individual works for Bosch in Germany or the U.S., the individual holds him or herself out as working for Bosch. This collective identity is captured by Bosch's mission statement: "We are Bosch," a unifying principle that links each entity and person within the Bosch Group.[1]

24.　　The Bosch defendants were knowing and active participants in the creation, development, marketing, and sale of illegal defeat devices for diesel vehicles specifically designed to evade U.S. emissions requirements in vehicles sold in the United States. These diesel vehicles include the Dodge Ram 1500 EcoDiesel and Jeep Grand Cherokee EcoDiesel, as well as diesel vehicles made by Volkswagen, Mercedes, and other manufacturers. Bosch's involvement in skirting diesel emissions standards encompasses work with multiple companies and predates the identified Class Vehicles in this Complaint.

25.　　Bosch participated not only in the development of the defeat device(s), but in the scheme to prevent U.S. regulators from uncovering the device's true functionality. Moreover, Bosch's participation was not limited to engineering the defeat device(s). Bosch was a knowing and active

---

[1] Bosh Mission Statement, available at http://www.wearebosch.com/index.en.html (last accessed January 12, 2017)

[2] *Id.*

[3] CARB Letter dated September 25, 2015, available at
https://www.arb.ca.gov/newsrel/arb_nius_20l3v09_25_final_signed_letter.pdf.

1  participant in massive conspiracies with Fiat Chrysler, Volkswagen, and other diesel manufacturers to
2  defraud U.S. consumers, regulators, and the public at large.

3      26.    During the Class Period, each Defendant acted as an agent, servant, employee, or joint
4  venturer of the other Defendants and in doing the things alleged acted within the course of such
5  agency, employment, or in furtherance of the joint venture to accomplish the scheme. Each
6  Defendant's acts alleged herein was done with the permission and consent of each of the other
7  Defendants. While each of the Defendants are separate legal entities, each Defendant works together
8  under a common identity as portrayed to the public and there is sufficient unity of interest and control
9  between each Defendant such that the acts of one are for the benefit and can be imputed to the acts of
10 the other.

11                          **JURISDICTION AND VENUE**

12     27.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d). The matter
13 in controversy exceeds $5,000,000 exclusive of interest and costs, and this matter is a class action in
14 which certain class members are citizens of States other than each Defendant's state of citizenship.
15 The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff and the Class have
16 brought a claim pursuant to 15 U.S.C. § 2301 *et seq.* and claims under the RICO Act, 18 U.S.C. §
17 1962. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

18     28.    This Court has personal jurisdiction over Plaintiff because Plaintiff resides in Redwood
19 Valley, California. This Court has personal jurisdiction over each Defendant pursuant to 18 U.S.C. §
20 1965(b) & (d), and/or California Code of Civil Procedure section 410.10. This Court has personal
21 jurisdiction over Defendants because they have minimum contacts with the United States, this judicial
22 district, and this State, and intentionally availed themselves of the laws of the United States and this
23 state by distributing, testing, selling, leasing, and/or providing warranties for Fiat Chrysler vehicles in
24 this State and District. At least in part because of Fiat Chrysler's and Bosch's misconduct as alleged in
25 this Complaint, Class Vehicles ended up on this state's roads and in dozens of dealerships across the
26 state.

27     29.    Venue is proper in this Court under 28 U.S.C. § 1391 because Fiat Chrysler advertises,
28 markets, leases, and sells a substantial number of automobiles in this District and has dealerships in

CLASS ACTION COMPLAINT

this District. Furthermore, a substantial part of the events alleged in this Complaint giving rise to Plaintiff and the Class's claims, including the false and misleading advertising alleged herein, occurred in, emanated from and/or were directed from this District. Venue is also proper in this Court because Fiat Chrysler and Bosch caused harm to Class Members residing in this District.

## SPECIFIC FACTUAL ALLEGATIONS

### Emissions Regulation in the United States

30.     1970 was a turning point for air pollution control in the United States. First, Congress enacted the Clean Air Act. That Act required a 90% reduction in emissions from new automobiles by 1975. The EPA, also established by Congress, is responsible for regulating motor vehicle pollution as one of its mandates.

31.     The Clean Air Act was enacted "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population," and "to initiate and accelerate a national research and development program to achieve the prevention and control of air pollution." 42 U.S.C. § 7401(b)(1)-(2).

32.     One of the requirements of the Clean Air Act is that vehicle manufacturers certify to the EPA that their products meet the requisite federal emission standards to control air pollution. To ensure that every vehicle introduced into United States commerce satisfies applicable emission standards the EPA administers a certification program. The EPA issues certificates of conformity ("COC"), under this standard and approves the introduction of vehicles satisfying the standards into United States commerce. Certificates of conformity must be issued by the EPA for every vehicle sold in the United States.[2] Class Vehicles (light-duty motor vehicles) at issue in this Complaint, must also obtain the COC. Additionally, emission standards for certain air pollutants, which include nitrogen oxides (NOx), must be satisfied by the Class Vehicles. 40 C.F.R. § 86.1811-04; 42 U.S.C. § 7401(b)(1)-(2).

33.     Diesel vehicles face a particular challenge in meeting emission standards. Diesel engines work by compressing a charge of air until it reaches high enough pressure and temperature to spontaneously combust diesel fuel, which is injected into the hot charge, rather than relying on a spark

---

[2] *Id.*

plug to initiate combustion as in a typical gasoline engine. Diesel engines operate with higher compression and expansion ratios than gasoline engines, and without a throttle, and therefore are more fuel efficient. However, because of the inhomogeneous nature of diesel combustion, and higher flame temperatures, a diesel engine typically produces more pollutants, which are more difficult to treat. The World Health Organization deemed them carcinogenic and approximately as dangerous as asbestos in 2012.

34. California Air Resources Board (CARB), a state regulatory body, sets emission standards for vehicles operating in the state. Emission reduction standards for automobiles are set by California's Low Emission Vehicle Regulations.

**Fiat Chrysler Aggressively Courts Environmentally Conscious Diesel Customers**

35. Consumers have been growing increasingly more environmentally conscious, and automotive manufacturers have taken notice, developing hybrid, electric, hydrogen fuel cell, and "clean" diesel alternatives to standard gas engines. Over the years, Fiat Chrysler increased its emphasis on diesel cars and engaged in an extensive marketing campaign to sell more "clean" diesel vehicles in the United States.

36. In 2014, Fiat Chrysler introduced its 3.0 liter "EcoDiesel" engine, aiming to capitalize on the green vehicle wave. The EcoDiesel engine found its home in the 2014 Dodge Ram 1500 EcoDiesel and the 2014 Jeep Grand Cherokee EcoDiesel.

37. Fiat Chrysler aggressively markets its EcoDiesel vehicles as having "advanced clean diesel technology," "unbelievable fuel economy," "ultra clean," and "emissions compliant." YouTube videos are part of Fiat Chrysler's advertising campaign for the Jeep EcoDiesel vehicles, including a nearly five minute commercial featuring photographers popular on social media that has been viewed well over a quarter of a million times on YouTube alone. Another video touted the 2014 Jeep Grand Cherokee EcoDiesel as "the greenest Jeep we've ever done."

38. Fiat Chrysler continued its barrage of advertisements promoting its vehicles as fuel-efficient, green and safe vehicles at an attractive price. Fiat Chrysler also represented that the EcoDiesel vehicles have "amazing capability," "amazing fuel economy," an "amazing powertrain" and an "amazing range." Yet Fiat Chrysler also emphasized the environmentally friendly nature of the

EcoDiesel vehicles and held itself out as a champion of the environment. These representations were false.

39.    Fiat Chrysler's widespread television, internet, and social media marketing paid off. Fiat's EcoDiesel vehicles were being promoted and sales increased. Fiat Chrysler was awarded as one of the 2014 Ward's 10 Best Engines for its EcoDiesel engine at an event sponsored in part by Bosch.

40.    In contradiction to its advertisements, the Class Vehicles were not environmentally friendly. Instead, Fiat Chrysler and Bosch had knowingly and intentionally manipulated the Class Vehicle's emission system, and the Class Vehicles were actually emitting well above the legal limit.

**International Emissions Cheating: Real World Dirty, Road Test "Clean" Diesel**

41.    After news of the now globally-known emissions cheating by Volkswagen broke, CARB and EPA looked at other diesel manufacturers with new vigor. On September 25, 2015, a week after issuing its notice of violation to Volkswagen, CARB sent a letter to multiple automobile manufacturers, including Fiat Chrysler, informing them that new testing methods would be used to screen a host of potentially affected models across a range of years for non-approved (undisclosed) Auxiliary Emission Control Devices (AECDs).[3]

42.    All modern engines are integrated with sophisticated computer components to manage the vehicle's operation, which includes engine control units (ECUs). Bosch tested, manufactured and sold the ECU and associated software (together, the "Bosch ECU") used by Volkswagen, Mercedes, and other manufacturers, as well as by Fiat Chrysler in the Class Vehicles. Bosch has publicly touted the effectiveness of its products for low-emission diesel vehicles.

43.    Bosch worked with Fiat Chrysler to create a unique set of specifications and software code to manage the vehicles' engine operation.

44.    With respect to the Class Vehicles, the Bosch ECU was also enabled by Bosch and Fiat Chrysler to surreptitiously evade emissions regulations. Both the Dodge Ram 1500 and the Jeep Grand Cherokee (the Class Vehicles) run Bosch software. Bosch and Fiat Chrysler worked together to develop and implement a specific set of software algorithms for implementation in the Class Vehicles,

---

[3] CARB Letter dated September 25, 2015, available at
https:// www.arb.ca.gov/newsrel/arb_iuc_2015)09_25_final_signed_letter.pdf.

which permitted Fiat Chrysler to adjust fuel levels, exhaust gas recirculation, air pressure levels, and even urea injection rates (where applicable). When carmakers test their vehicles against EPA emission standards, they place their cars on dynamometers (large rollers) and then perform a series of specific maneuvers prescribed by federal regulations.

45.     Bosch's ECUs and software gave Volkswagen the ability to detect test conditions by monitoring vehicle speed, acceleration, engine operation, ambient air pressure, and even the position of the steering wheel. Fiat Chrysler used the Bosch ECU, which contained 8 undisclosed AECDs (defeat devices) to reduce the effectiveness of the emission control system when conditions were detected which were **not the test cycle**. Such non-test-cycle conditions occur frequently in everyday driving, and lead to the production of excess amounts of NOx.

46.     This workaround is illegal. The Clean Air Act expressly prohibits defeat devices, defined as any auxiliary emission control device "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use." 40 C.F.R. § 86.1803-01; *see also id.* § 86.1809-10 ("No new light-duty vehicle, light-duty truck, medium-duty passenger vehicle, or complete heavy duty vehicle shall be equipped with a defeat device."). Moreover, the Clean Air Act prohibits the sale of components used as defeat devices, "where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use." 42 U.S.C. § 7522(a)(3). Finally, in order to obtain a COC, automakers must submit an application, which lists all AECDs installed in the vehicle, a justification for each, and an explanation of why the control device is not a defeat device.

47.     To obtain the COCs necessary to sell its vehicles, Fiat Chrysler did not disclose, and affirmatively concealed, the presence of the test-detecting and performance altering software code that it developed with Bosch from government regulators, making the software an illegal defeat device.

48.     Because the COCs were fraudulently obtained, and because the Class Vehicles did not conform "in all material respects" to the specifications provided in the COC applications, the Class Vehicles were never covered by a valid COC and therefore were never legal for sale, or EPA and/or CARB compliant, as represented. Fiat and Bosch hid these facts from EPA, other regulators, and its

1  dealers and consumers. Fiat Chrysler continued to sell and lease the Class Vehicles to the driving
2  public, despite their illegality, and with the complicity of Bosch.

3      49.    Fiat Chrysler's illegal workaround was enabled by its close relationship with Bosch,
4  which derives a sizeable portion of its annual revenue from developing and manufacturing parts for
5  use in diesel vehicles, including those made by Fiat Chrysler. Bosch was well aware that Fiat was
6  using its emissions control components as a defeat device and, in fact, worked with Fiat Chrysler to
7  develop the software algorithms specifically tailored for the Class Vehicles.

8          **Fiat Chrysler gets caught cheating by EPA and CARB**

9      50.    The EPA issued a notice of violation of the Clean Air Act, 42 U.S.C. §§ 7401 – 7671q,
10  and its implementing regulations to Fiat Chrysler on January 12, 2017. According to the notice, Fiat
11  Chrysler's light-duty diesel vehicles from 2014-2016 contained at least eight undisclosed AECDs that
12  "appear to cause the vehicle to perform differently when the vehicle is being tested for compliance
13  with the EPA emission standards using the Federal emission test procedure (e.g. FTP, US06), than in
14  normal operation and use."[4]  Among other violations, EPA asserts "FCA violated section 203(a)(1) of
15  the CAA [Clean Air Act], 42 U.S.C. S 7522(a)(1), each time it sold, offered for sale, introduced into
16  commerce, delivered for introduction into commerce, or imported (or caused any of the foregoing with
17  respect to) approximately 103,828 new motor vehicles within these test groups."[5] CARB also issued a
18  notice of violation to Fiat Chrysler on January 12, 2017.

19      51.    Fiat Chrysler did not act alone. At the heart of the diesel scandal are the Bosch
20  defendants. Bosch was an active and knowing participant in the scheme to evade U.S. emissions
21  requirements. Bosch manufactured and tested the engine control unit and software that allowed Fiat
22  Chrysler to implement the defeat device(s).

23      52.    Defeat devices, like the one(s) used by Fiat Chrysler, cheat the emission control
24  systems in a vehicle that are used to comply with the Clean Air Act emission standards. The defeat
25  devices use multiple factors in sensing whether the vehicle is being tested for compliance with EPA

26

27  [4] EPA Notice of Violation or Model Year 2014-2016 diesel light-duty vehicles (Dodge Ram and Jeep Grand Cherokee), available at https://www.epa.gov/sites/production/files/2017-01/documents/fca-caa-nov-2017-01-12.pdf.
28  [5] *Id.*

CLASS ACTION COMPLAINT

emission standards. The parameters of the federal test procedure used for emission testing for EPA certification purposes are tracked by these inputs.

53.    The Class Vehicles contain at least eight undisclosed AECDs, which work to alter the performance of the vehicles when testing conditions are present. When the Class Vehicles were not being tested, the EcoDiesel vehicles polluted at levels far above the legal limits set by EPA and CARB.

54.    Fiat Chrysler's use of the defeat device caused the Class Vehicles to not conform in all material respects to the vehicle specifications described in the applications for the COCs. As a result, Fiat Chrysler violated section 203(a)(1) of the Clean Air Act, 42 U.S.C. § 7522(a)(1), by selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing these vehicles, or for causing any of the foregoing acts.

55.    Fiat Chrysler violated the Clean Air Act by making and selling vehicles with defeat devices that cheated emissions testing and also allowed for higher levels of air emissions than they certified to EPA when not being tested.

56.    Fiat Chrysler knew that the defeat devices it designed and installed would cheat the Clean Air Act emission standards because the software was designed to track the parameters of the federal test procedure and alter the emission control system so that it underperformed whenever the software determined the vehicle was not undergoing emissions testing.

57.    The purpose of the Clean Air Act and associated regulations is to reduce emissions of NOx and other pollutants from mobile sources of air pollution in an effort to protect human health and the environment. NOx pollution damages the environment and is a risk to human health.

58.    It is well documented that these pollutants are associated with serious health effects, including increased asthma attacks and other respiratory illnesses. Exposure to ozone and particulate matter which result from nitrogen dioxide, a by-product of NOx emissions, have been linked to an increased risk of heart attacks, strokes, and premature death due to respiratory-related or cardiovascular-related effects. Recent studies have shown that not only can NOx cause or exacerbate a

number of health conditions, but exposure to these toxins are correlated with lower birth weight and smaller head circumference in babies.[6]

59.     Eco-friendly vehicles are central to our environment and health. The largest selling factor for diesel cars is their fuel economy and low carbon emissions as compared to standard gasoline engines. Diesel fuel also contains more energy density than gasoline. These characteristics result in anywhere from 20% to 40% better fuel economy. As a result, the United States and California governments have encouraged the use of diesel engines to meet fuel efficiency and greenhouse gas targets.

60.     The down side of diesel cars is that they emit far more nitrogen dioxide than standard gasoline engines. Consumers are charged substantially more upfront when purchasing the vehicles. Class Members, under the impression they were buying an eco-friendly car among other characteristics, paid a significant premium for their Class Vehicles.

61.     According to automotive technology experts, disengaging the pollution controls on a diesel-fueled car can yield better fuel economy, urea consumption and performance, including increased torque and acceleration. Fiat Chrysler benefitted from these features because they increased the Class Vehicles' selling appeal.

62.     Fiat Chrysler cheated Class Members by covertly and intentionally disregarding United States regulations put in place to protect consumers and the environment.

63.     Fiat Chrysler charged a substantial premium on their "clean" diesel vehicles – which Fiat ironically marketed under the term "EcoDiesel."

64.     Plaintiff and the Class have been harmed as a result of Fiat Chrysler's actions. Members of the Class would not have purchased the Class Vehicles, and/or would have paid substantially less for their vehicle. The loss of value to the Class Vehicles is directly attributable to Defendants' fraudulent and deceptive actions. The Class Vehicles are not worth as much in a trade or

---

[6] "Review of evidence on health aspects of air pollution – REVIHAAP Project," World Health Organization, Regional Office for Europe, World Health Organization 2013. http://www.euro.who.int/_data/assets/pdf_file/0004/193108/FEVIHAAP- Final-technical-report-final-version.pdf?ua=1.

CLASS ACTION COMPLAINT

sale as if the vehicle had been as warranted. The value of the Class Vehicles is furthered decreased by this actual harm and also the harm to the brand.

65.     Plaintiff and the Class will more than likely lose the use of their vehicles as a result of a recall. Moreover, in order for the vehicles to comply with federal emission standards the vehicles will have reduced fuel economy and reduced acceleration during real world use after the Class Vehicles are remediated. As a result, the Plaintiff Class has sustained incidental and consequential damages as herein alleged.

**CLASS ACTION ALLEGATIONS**

66.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and all others similarly situated. Plaintiff seeks to represent the following Classes:

**Nationwide RICO Class**

All persons or entities in the United States who owned or leased a Class Vehicle.

**California Class**

All current and former owners of Class Vehicles who reside in the State of California and/or who purchased or leased Class Vehicles in California.

67.     Expressly excluded from the Classes are Defendants and their subsidiaries, affiliates, officers, directors, and employees.

68.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements on an individual basis. The proposed Classes are appropriate under Rule 23(a), 23(b), 23(b)(2), or 23(b)(3). The proposed Classes are made up of thousands of persons dispersed throughout California and joinder is impracticable. The precise number and identity of Class Members are unknown to Plaintiff at this time, but can be obtained from Fiat Chrysler's internal records.

69.     There are questions of law and fact common to the members of the Classes, which predominate over questions affecting only individual Class members, including:

CLASS ACTION COMPLAINT

- Whether Bosch designed and manufactured a defeat device;

- Whether Bosch supplied the defeat device to Fiat Chrysler with the knowledge that Fiat Chrysler would use it in production of Class Vehicles;

- Whether Fiat Chrysler and Bosch engaged in the conduct alleged in this Complaint;

- Whether Fiat Chrysler knew about the defeat device and, if so, how long Fiat Chrysler has known;

- Whether Fiat Chrysler's publicity and advertising regarding the environmental friendliness, fuel emission compliance, fuel efficiency and/or performance of the Class Vehicles was misleading;

- Whether Fiat Chrysler has engaged in unlawful, unfair or fraudulent business practices;

- Whether Fiat Chrysler misrepresented the emission standards compliance and credentials, fuel efficiency and/or performance of the Class Vehicles;

- Whether Fiat Chrysler misrepresented the emissions levels, fuel efficiency and/or performance that the Class Vehicles could achieve under normal driving conditions;

- Whether Fiat Chrysler publicized and advertised the environmental friendliness, fuel emission compliance, fuel efficiency and/or performance of the Class Vehicles;

- Whether Fiat Chrysler's misrepresentations and omissions regarding the compliance with emissions levels, environmental friendliness, fuel efficiency and/or performance of the Class Vehicles has deceived or is likely to have deceived Plaintiffs and the Class;

- Whether Bosch acted in concert with Fiat Chrysler and aided and abetted Fiat Chrysler's fraud;

- Whether Fiat Chrysler's and Bosch's conduct violates RICO and other laws;

- Whether Fiat Chrysler's conduct violated the Magnuson- Moss Warranty Act;

- Whether Fiat Chrysler's conduct violated the California Consumer Legal Remedies Act;

CLASS ACTION COMPLAINT

• Whether Fiat Chrysler's conduct violated California Business and Professions Code § 17200, *et seq.*;

• Whether Fiat Chrysler's conduct violated California False Advertising Law (Business and Professions Code § 17500, *et seq.*);

• Whether Fiat Chrysler breached express and/or implied warranties;

• Whether Fiat Chrysler's unlawful, unfair or deceptive practices have harmed Plaintiff and the Class members;

• Whether Plaintiff and the members of each Class are entitled to equitable or injunctive relief and,

• Whether Plaintiff and the members of each Class are entitled to damages, including punitive damages.

70. Plaintiff is a member of the Classes and Plaintiff's claims are typical of the claims of the Classes.

71. Plaintiff is willing and prepared to serve the Court and the proposed Classes in a representative capacity. Plaintiff will fairly and adequately protect the interests of the Classes and has no interests adverse to or which conflict with the interests of the other members of the Classes.

72. Plaintiff has engaged the services of counsel who are experienced in complex class litigation, will adequately prosecute this action, and will assert and protect the rights of and otherwise represent the Plaintiff and absent Class members.

73. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistency and varying adjudications, establishing incompatible standards of conduct for Fiat Chrysler and Bosch.

74. Fiat Chrysler and Bosch have acted on grounds generally applicable to the Classes, thereby making relief with respect to the members of the Classes as a whole appropriate.

75. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Prosecution of the complaint as a class action will provide redress for individual claims too small to support the expense of complex litigation and reduce the possibility of repetitious litigation.

CLASS ACTION COMPLAINT

**FIRST CAUSE OF ACTION**
**Violations of Racketeer Influenced and Corrupt Organizations Act (RICO)**
**18 U.S.C. § 1962(c) – (d)**
**(On Behalf of Plaintiff and the Nationwide RICO Class against all defendants)**

76.     Plaintiff re-alleges and incorporates by reference the allegations set forth above.

77.     Plaintiff brings this claim individually and on behalf of the Nationwide RICO Class against all defendants.

78.     Defendants are all "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

79.     Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Section 1962(d), in turn, makes it unlawful for "any person to conspire to violate."

80.     For many years now, defendants have aggressively sought to increase the sales of Class Vehicles in an effort to bolster revenue, augment profits and increase Fiat Chrysler's share of the diesel vehicle market. Finding it impossible to achieve their goals lawfully, however, Bosch and Fiat resorted instead to orchestrating a fraudulent scheme and conspiracy. In particular, Bosch and Fiat, along with other entities and individuals, created and/or participated in the affairs of an illegal enterprise (the "Enterprise") that's primary purpose was to deceive the regulators and the public into believing the Class Vehicles were "clean" and environmentally friendly." As explained in greater detail below, Bosch's and Fiat's acts in furtherance of the Enterprise violate section 1962(c) and (d).

81.     Upon information and belief, the Enterprise consisted of FCA US LLC, Fiat Chrysler Automobiles N.V., Robert Bosch GmbH, and Robert Bosch LLC.

82.     Bosch tested, manufactured, advertised and sold the electronic control unit and associated software that managed the emissions control system used by Fiat Chrysler in the Class Vehicles (referred to collectively as the "Bosch ECU").

83.     Bosch's bad acts are not limited to the conspiracy with Fiat Chrysler that is the subject of this Complaint. Bosch also worked with Volkswagen, Mercedes, and other manufacturers to

1    develop and implement a specific and unique sets of software algorithms for those manufacturers to

2    surreptitiously evade emissions regulations.

3           84.      In this case, Bosch customized the ECU for installation in the Class Vehicles with

4    unique software code to detect when the vehicle was undergoing emissions testing, as described

5    above.

6           85.      Bosch's involvement in emissions cheating came to light during the litigation

7    concerning Volkswagen's defeat device. As was publicly reported, the Bosch defendants, seeking to

8    conceal their involvement in the unlawful Enterprise, sent a letter to Volkswagen AG in 2007 stating

9    that Volkswagen diesels could not be lawfully operated if the LNT or SCR after treatment was

10    disabled.[7] The exact same logic applies to the Fiat Chrysler Class Vehicles., as several of the AECDs

11    identified by EPA alter SCR (selective catalytic reduction). For example:

12
13
14
15

> The operation of AECD #4 [DEF Dosing Disablement during SCR Adaptation], particularly when combined with AECD #8 [Use of Load Governor to Delay Ammonia Refill of SCR Catalyst], increases emissions of tailpipe NOx under conditions reasonably expected to be encountered in normal vehicle operation and use.
> EPA NOV letter dated January 12, 2017, pp. 5-6.

16           86.      The persons and entities described in paragraph 81 are members of and constitute an

17    "association-in-fact" enterprise.

18           87.      At all relevant times, the Enterprise: (a) had an existence separate and distinct from

19    each defendant; (b) was separate and distinct from the pattern of racketeering in which defendants

20    engaged; and (c) was an ongoing organization consisting of legal entities, including Fiat Chrysler and

21    Bosch, and other entities and individuals associated for the common purpose of designing,

22    manufacturing, distributing, testing, and selling the Class Vehicles through fraudulent COCs and EOs,

23    false emissions tests, deceptive and misleading marketing and materials, and deriving profits and

24    revenues from those activities. Each member of the Enterprise shared in the bounty generated by the

25
26
27

---

28   [7] Stef Shrader, *Feds Are Now Investigating Volkswagen Supplier Bosch Over Dieselgate*, Jalopnik (Nov. 19, 2015), http://jalopnik.com/feds-are-now-investgating-volkswagen-supplierbosch-ov-1743624448.

CLASS ACTION COMPLAINT

enterprise, i.e., by sharing the benefit derived from increased sales revenue generated by the scheme to defraud consumers and franchise dealers alike nationwide.

88.    The Enterprise functioned by selling vehicles and component parts to the consuming public. Many of these products are legitimate, including vehicles that do not contain defeat devices. However, Bosch, Fiat Chrysler, and their co-conspirators, through their illegal Enterprise, engaged in a pattern of racketeering activity, which involves a fraudulent scheme to increase revenue for defendants and the other entities and individuals associated-in-fact with the Enterprise's activities through the illegal scheme to sell the Class Vehicles.

89.    The Enterprise engaged in, and its activities affected interstate and foreign commerce, because it involved commercial activities across state boundaries, such as the marketing, promotion, advertisement and sale or lease of the Class Vehicles throughout the country, and the receipt of monies from the same.

90.    Within the Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The Enterprise used this common communication network for the purpose of manufacturing, marketing, testing, and selling the Class Vehicles to the general public nationwide.

91.    Each participant in the Enterprise had a systematic linkage to each other through corporate ties, contractual relationships, financial ties, and continuing coordination of activities. Through the Enterprise, Bosch and Fiat functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes of increasing their revenues and market share, and minimizing losses.

92.    Defendants participated in the operation and management of the Enterprise by directing its affairs, as described herein. While Bosch and Fiat Chrysler participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

93.    Fiat Chrysler exerted substantial control and participated in the affairs of the Enterprise by:

CLASS ACTION COMPLAINT

(a)    Designing the Class Vehicles with defeat devices;

(b)    Failing to correct or disable the defeat devices when warned;

(c)    Manufacturing, distributing, and selling the Class Vehicles that emitted greater pollution than allowable under the applicable regulations;

(d)    Misrepresenting and omitting, or causing such misrepresentations and omissions to be made, vehicle specifications on COC and EO applications;

(e)    Introducing the Class vehicles into the stream of U.S. commerce without a valid EPA COC and/or CARB EO;

(f)    Concealing the existence of the defeat devices and the unlawfully high emissions from regulators and the public;

(g)    Persisting in the manufacture, distribution, and sale of the Class Vehicles even after questions were raised about the emissions testing and discrepancies concerning the same;

(h)    Misleading government regulators as to the nature of the defeat devices and the defects in the Class Vehicles;

(i)    Designing and distributing marketing materials that misrepresented and concealed the defect in the Class Vehicles;

(j)    Otherwise misrepresenting or concealing the defective nature of the Class Vehicles from the public and regulators; and

(k)    Illegally selling and/or distributing the Class Vehicles; collecting revenues and profits from the sale of such products, and ensuring that the other defendants and unnamed coconspirators complied with the fraudulent scheme.

94.    Bosch also participated in, operated, and/or directed the Enterprise. Bosch participated in the fraudulent scheme by manufacturing, installing, testing, modifying, and supplying the Bosch ECU, which effectively evaded emissions requirements and regulations. Bosch exercised tight control over the coding and other aspects of the software and closely collaborated with Fiat Chrysler to develop, customize, and calibrate the Bosch ECU and/or 8 undisclosed AECDs. Additionally, Bosch continuously cooperated with Fiat Chrysler to ensure that the Bosch ECU was fully integrated into the

CLASS ACTION COMPLAINT

Class Vehicles. Bosch also participated in the affairs of the Enterprise by concealing the defeat devices on U.S. documentation and in communications with U.S. regulators. Bosch collected millions of dollars in revenues and profits from the Bosch ECUs installed in the Class Vehicles.

95.    Without defendants' willing participation, including Bosch's active involvement in developing and supplying the critical defeat devices for the Class Vehicles, the Enterprise's scheme and common course of conduct would not have been successful.

96.    Bosch and Fiat Chrysler directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiff cannot fully know at present, because Bosch, Fiat, and other unidentified co-conspirators control such information.

97.    The members of the Enterprise all served a common purpose; namely, to outsell their law-abiding competitors and increase their revenues through the sale of as many Class Vehicles (including the emissions components made and sold by Bosch) as possible. Each member of the Enterprise shared the bounty generated by the enterprise, i.e., by sharing the benefit derived from increased sales revenue generated by the scheme to defraud. Fiat Chrysler sold more Class Vehicles by using an emissions control system that was cheaper to install and allowed for generous performance and efficiency tuning, all the while charging consumers a premium for purportedly "clean," "environmentally friendly" and "fuel efficient" Class Vehicles. The Bosch defendants, in turn, sold more ECUs because Fiat Chrysler manufactured and sold more Class Vehicles. Bosch and Fiat achieved their common purpose by repeatedly misrepresenting and concealing the nature of the Class Vehicles and the ability of the emissions control systems (including the Bosch-supplied parts) to effectively reduce toxic emissions during normal operating conditions.

98.    To carry out, or attempt to carry out the scheme to defraud, Bosch and Fiat conducted or participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity that employed the use of the mail and wire facilities, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).

99.    Specifically, Bosch and Fiat Chrysler participated in the scheme to defraud by using mail, telephone, and the Internet to transmit writings travelling in interstate or foreign commerce.

100.    Defendants' use of the mails and wires include, but are not limited to, the transmission, delivery, or shipment of the following by Bosch, Fiat Chrysler, or third parties that were foreseeably caused to be sent as a result of Bosch's and Fiat's illegal scheme:

(a)    orders of and invoices for Class Vehicles;

(b)    communications within the Enterprise;

(c)    shipments of Class Vehicles;

(d)    invoices for component parts;

(e)    false or misleading communications, including advertisements, representing the Class Vehicles as emissions compliant or environmentally friendly;

(f)    documents intended to facilitate the sale of Class Vehicles;

(g)    revenues and profits to members of the Enterprise;

(h)    meeting invitations, agendas, and minutes;

(i)    other paperwork and communications concerning the Class Vehicles and/or Bosch ECU;

(j)    bills of lading, invoices, shipping records, reports, and correspondence;

(k)    deposits of proceeds; and

(l)    other documents and things, including electronic communications.

101.    The mail and wire transmissions described herein were made in furtherance of Bosch's and Fiat's scheme and common course of conduct to deceive regulators and consumers and lure consumers into purchasing the Class Vehicles, which Bosch and Fiat knew or recklessly disregarded as emitting illegal amounts of pollution, despite their advertising campaign that the Class Vehicles were "clean" diesel cars.

102.    Many of the precise dates of the fraudulent uses of the U.S. Mail and interstate wire facilities have been deliberately hidden, and cannot be alleged without access to Bosch's and Fiat's books and records. However, Plaintiff has described the types of, and in some instances, occasions on which the predicate acts of mail and/or wire fraud occurred. They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described in the preceding paragraphs.

103.    Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In violation of 18 U.S.C. § 1962(d), Bosch and Fiat Chrysler conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with Bosch and Fiat in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase market share, and/or minimize losses for Bosch, Fiat Chrysler, and their unnamed co-conspirators throughout the illegal scheme and common course of conduct.

104.    Bosch and Fiat Chrysler aided and abetted others in the violations of the above laws, thereby rendering them indictable as principals in the 18 U.S.C. §§ 1341 and 1343 offenses.

105.    To achieve their common goals, Bosch and Fiat hid from the general public the unlawfulness and emission dangers of the Class Vehicles and obfuscated the true nature of the defect even after regulators raised concerns. Bosch and Fiat suppressed and/or ignored warnings from third parties, whistleblowers, and governmental entities about the discrepancies in emissions testing and the defeat devices present in the Class Vehicles.

106.    Bosch, Fiat Chrysler, and each member of the conspiracy, with knowledge and intent, have agreed to the overall objectives of the conspiracy and participated in the common course of conduct to commit acts of fraud and indecency in designing, manufacturing, distributing, marketing, testing, and/or selling the Class Vehicles (and the defeat devices contained therein).

107.    Indeed, for the conspiracy to succeed, Bosch, Fiat Chrysler, and their coconspirators had to agree to implement and use the similar devices and fraudulent tactics—specifically complete secrecy about the defeat devices in the Class Vehicles.

108.    Bosch and Fiat Chrysler knew and intended that government regulators, as well as Plaintiff and Class members, would rely on the material misrepresentations and omissions made by them about the Class Vehicles. Bosch and Fiat knew and intended Plaintiff and the Class would incur costs and damages as a result. As fully alleged herein, Plaintiff and the Class relied upon Bosch's and Fiat's representations and omissions that were made or caused by them. Plaintiff's reliance is made obvious by the fact that: (1) they purchased hundreds of thousands of vehicles that never should have

1   been introduced into the U.S. stream of commerce and whose worth is far less. In addition, the EPA,

2   CARB, and other regulators relied on the misrepresentations and material omissions made or caused to

3   be made by defendants; otherwise Fiat Chrysler could not have obtained valid COCs and EOs to sell

4   the Class Vehicles.

5        109.   Bosch's and Fiat's conduct in furtherance of this scheme was intentional. Plaintiff and

6   the Class were harmed as a result of defendants' intentional conduct. Plaintiff, the Class, regulators

7   and consumers, among others, relied on Bosch's and Fiat's material misrepresentations and omissions.

8        110.   During the design, manufacture, testing, marketing and sale of the Class Vehicles,

9   Bosch and Fiat Chrysler shared technical, marketing and financial information that plainly revealed

10  the emissions control systems in the Class Vehicles as the ineffective, illegal and fraudulent piece of

11  technology they were and are. Nevertheless, Bosch and Fiat Chrysler shared and disseminated

12  information that deliberately represented Class Vehicles as "clean," "environmentally friendly," and

13  "fuel efficient."

14       111.   By reason of and as a result of the conduct of Bosch and Fiat Chrysler, and, in

15  particular, their pattern of racketeering activity, Plaintiff and the Class have been injured in multiple

16  ways, including, but not limited to:

17              (a)   Overpayment for Class Vehicles, as Plaintiff and Class believed that they were

18                    paying for vehicles that met certain emission and fuel efficiency standards and

19                    obtained vehicles that were not legal to sell in the United States; and

20              (b)   The value of the Class Vehicles has diminished, thus reducing their sale and

21                    resale value.

22       112.   Bosch's and Fiat's violations of 18 U.S.C. § 1962(c) and (d) have directly and

23  proximately caused injuries and damages to Plaintiff and the Class, and Plaintiff and the Class are

24  entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief,

25  costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c). Bosch and Fiat knew,

26  understood, and intended for members of the Class to purchase the Class Vehicles, and knew,

27  understood, and foresaw that revelation of the truth would injure members of the Class.

28

## SECOND CAUSE OF ACTION
### Violation of the Magnuson-Moss Warranty Act
### 15 U.S.C. § 2301, *et seq.*
### (On Behalf of Plaintiff and the California Class against the Fiat Chrysler defendants)

113.    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

114.    This claim is brought by Plaintiff and the California Class under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.

115.    The Class Vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

116.    Fiat Chrysler is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)-(5).

117.    Written warranties as defined in 15 U.S.C. §2301(6)(A) and/or (B), which Fiat Chrysler has breached were received by Plaintiff and the Class.

118.    Plaintiff and the Class are "consumers" as defined in 15 U.S.C. § 2301(3). Because they bought a Class Vehicle, they are consumers, and they are entitled to enforce both written and implied warranties under California law.

119.    Under 15 U.S.C. § 2310(e), Plaintiff and the Class are not required to provide Fiat Chrysler notice of this class action and an opportunity to cure until the time the Court determines the representative capacity of Plaintiff pursuant to F.R.Civ.P. 23.

120.    Fiat Chrysler breached their written warranties, and are therefore liable to Plaintiff and the Class under 15 U.S.C. § 2310(d)(1).

121.    As part of the sale transactions relating to the Class Vehicles, Fiat Chrysler gave an implied warranty under the Act. As part of that implied warranty, Fiat warranted that the Class Vehicle complied with all applicable federal and state regulations, including emission regulations. The implied warranty of merchantability was breached by Fiat.

122. As a result of Fiat Chrysler's breaches of the warranties to Plaintiff, Plaintiff and the Class are entitled to damages. These damages include economic damages including either a return of Plaintiff and Class Members' purchase price; and/or the difference between the price paid for the Class Vehicle as warranted and the actual value of the Class Vehicle as delivered, and consequential damages.

123. Further, Plaintiff and the Class are entitled to reasonable attorneys' fees and costs as determined by the Court.

**THIRD CAUSE OF ACTION**
**Violation of the Unfair Competition Act**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff and the California Class against the Fiat Chrysler defendants)**

124. Plaintiff re-alleges and incorporates by reference each of the paragraphs set forth above as though fully set forth herein.

125. Plaintiff and members of the general public bring this claim pursuant to the "unlawful" prong of Business & Professions Code § 17200 et seq. ("UCL"), which provides that "unfair competition shall mean and include any unlawful, unfair or deceptive business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code."

126. Fiat Chrysler has violated and continues to violate section 17200's prohibition against engaging in "unlawful" business acts or practices, by, among other things:

- Violating the CLRA, Civil Code section 1750, et seq.;

- Violating federal environmental laws, including the Clean Air Act; and

- Violating Business & Professions Code section 17500, *et seq.*

127. Fiat Chrysler also acted fraudulently and unfairly for purposes of section 17200. Fiat Chrysler's misrepresentations and omissions regarding the Class Vehicles' emissions, environmental standards, fuel efficiency, and performance in their advertising, public statements and marketing were a material factor in inducing Plaintiff and the Class to purchase their Class Vehicles.

128. As a result of Fiat Chrysler's unlawful business acts and practices, Plaintiff and the Class suffered injury in fact and lost money and/or property. Each class member suffered harm when each was required to pay a purchase price for their Class Vehicles which they never would have purchased if the true facts were known; or paid a price in excess of what a Class member would have paid if Fiat Chrysler had accurately disclosed the Class Vehicles' characteristics and in the form of decreased resale value of the Vehicles.

27

129.    Plaintiff and the Class are entitled to full restitution and disgorgement of the profits from Defendants' unlawful business practices.

130.    Plaintiff is also entitled to equitable relief as a result of Fiat Chrysler's violations of the Business & Professions Code section 17200, *et seq.* Plaintiff and Class are entitled to such relief in the form of full restitution for the inflated sale price of the Vehicles.

131.    Plaintiff and the Class also seek an order enjoining Fiat Chrysler from continuing their unlawful business practices and from continuing such conduct in the future.

**FOURTH CAUSE OF ACTION**
**Violation of the False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, *et seq.***
**(On Behalf of Plaintiff and the California Class against the Fiat Chrysler defendants)**

132.    Plaintiff re-alleges and incorporates by reference each of the paragraphs set forth above as though fully set forth herein.

133.    Plaintiff and the Class bring this cause of action pursuant to Business & Professions Code § 17500, *et seq.*, which provides that it is unlawful for any person or corporation, or any employee thereof "with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property . . . or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

134.    By disseminating false and misleading messages in their advertising about the fuel efficiency, environmentally friendly emissions and performance, Fiat Chrysler violated California's False Advertising Law, Business & Professions Code section 17500, *et seq.*

135.    Fiat Chrysler's representations and/or omissions have deceived and were and are likely to deceive Plaintiff, the Class, and consumers nationwide and were a substantial and material factor in

their decisions to purchase Class Vehicles. Were Plaintiff and the Class aware of the actual facts, they would not have purchased the Class Vehicles or would have paid substantially less for their vehicles.

136.    Fiat Chrysler's conduct is and has been substantially similar conduct with respect to Plaintiff and to each member of the Class.

137.    Fiat Chrysler's false and misleading advertising caused Plaintiff and the Class injury in fact and lost money and/or property. Plaintiff and Class members suffered harm when each was required to pay a purchase price in excess of what a Class member would have paid if Fiat Chrysler had accurately disclosed the Class Vehicles' characteristics and in the form of decreased resale value of the Class Vehicles.

138.    Plaintiff and the Class are entitled to equitable relief in the form of full restitution of all monies paid for the sales price of the Vehicles, diminished value of the Class Vehicles, and/or disgorgement of the profits derived from Fiat Chrysler's false and misleading advertising.

139.    Plaintiff and the Class also seek an order enjoining Fiat Chrysler from such future conduct.

## FIFTH CAUSE OF ACTION
### Fraud
### (On Behalf of Plaintiff and the California Class against the Fiat Chrysler defendants)

140.    Plaintiff re-alleges and incorporates by reference each of the paragraphs set forth above as though fully set forth hereinafter.

141.    The material facts Fiat Chrysler misrepresented, omitted and/or concealed from Plaintiff include:

142.    Representing to consumers purchasing the Class Vehicles that these vehicles' emissions, fuel efficiency, and performance are as advertised and publicized.

143.    Representing in their advertising emissions and environmental characteristics for the Class Vehicles that are false.

144.    Plaintiff and the Class members have suffered harm as a result of these misrepresentations, concealments, and violations.

145.    Fiat Chrysler's public statements, misrepresentations, and omissions regarding the Class Vehicles' environmentally friendly properties, including their emissions, environmental standards, fuel efficiency, and performance in their advertising, were substantial and material factors in inducing Plaintiff and the Class to purchase their Class Vehicles. Plaintiff and the Class suffered injury in fact and lost money and/or property as a result of Fiat Chrysler's unlawful business acts and practices, and Class members have suffered harm when each was required to pay a purchase price for their Class Vehicle in excess of what a Class member would have paid if Fiat Chrysler had accurately disclosed the Class Vehicles' characteristics and in the form of decreased resale value of the Vehicles.

146.    Accurate information about the environmental properties of its vehicles, their environmental friendliness, emissions, fuel efficiency and performance were concealed from Plaintiff and the Class.

147.    Said representations were made by Fiat Chrysler when Fiat Chrysler either knew that the representations were false, or made the representations recklessly and without regard for their truth.

148.    Fiat Chrysler had a duty and violated said duty to disclose the true characteristics of the Class Vehicles due to their superior knowledge as well as due to their affirmative misrepresentations regarding the environmental friendliness of the vehicles.

149.    Fiat Chrysler's conduct was intended to induce Plaintiff and the Class to rely on their representations. Fiat Chrysler intended to induce Plaintiff and the Class to: (a) purchase Class Vehicles; and (b) to purchase Class Vehicles at a higher purchase price, than they would have absent Fiat Chrysler's misrepresentations and concealment.

150.    Reliance by Plaintiff and the Class was reasonable based upon Fiat Chrysler's representations regarding the characteristics of the Class Vehicles. And Plaintiff and the Class's reasonable reliance upon Fiat Chrysler's representations was a substantial factor in causing their harm.

151.    As a direct and legal result of Fiat Chrysler's fraud, Plaintiff and the Class have sustained damages in an amount to be determined at trial.

CLASS ACTION COMPLAINT

152.   The aforementioned acts of Defendants, and each of them, were done maliciously, oppressively, and fraudulently, and Plaintiff and the Class are entitled to punitive and exemplary damages in an amount be shown according to proof at trial.

## SIXTH CAUSE OF ACTION
### Breach of Implied Warranty
### (On Behalf of Plaintiffs and the California Class against the Fiat Chrysler defendants)

153.   Plaintiff re-alleges and incorporates by reference each of the paragraphs set forth above as though fully set forth herein.

154.   Fiat Chrysler impliedly warranted to persons purchasing the Class Vehicles that these vehicles were what they were represented to be.

155.   Fiat Chrysler's implied warranties induced Plaintiff and other Class members to purchase the Class Vehicles from Fiat Chrysler. Plaintiff and Class members both directly and indirectly believed and relied upon by these implied warranties. And said implied warranties induced them to choose Fiat Chrysler's Class Vehicles. Plaintiff and the Class's reliance was justified, and was based on Fiat Chrysler's skill, expertise, and judgment in the design, manufacturing, testing, labeling, distribution, or sale of such products.

156.   Fiat Chrysler had knowledge of the purpose for which its Class Vehicles were purchased at the time of sale, and at the time of sale also impliedly warranted the same to be, in all respects, fit and proper for this purpose.

157.   Said warranties were breached by Fiat Chrysler, in that the Class Vehicles were not fit for the purpose for which they were intended and used; rather Plaintiff and the Class were sold vehicles by Fiat Chrysler that were not fit for use as represented. The defect in the Class Vehicles existed prior to the delivery of the products to Plaintiff and the Class.

158.   Plaintiff and the Class have suffered injury in fact and have suffered an economic loss by, *inter alia*: (a) leasing or purchasing a product they never would have leased or purchased; (b) leasing and/or purchasing an inferior product whose nature and characteristics render it of a lesser value than represented, (c) incurring costs for diminished resale value of the Class Vehicles purchased, (d) leasing and/or purchasing a product that poses a danger to the health and safety of the public, (e)

CLASS ACTION COMPLAINT

incurring increased costs to repair the Class Vehicles purchased, and (f) incurring costs for loss of use. Plaintiffs and the Class request the Court issue an injunction restraining and enjoining Fiat Chrysler from disseminating false and misleading advertising regarding the environmental qualities of the Class Vehicles.

**SEVENTH CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the California Class against the Fiat Chrysler defendants)**

159.    Plaintiffs incorporate by reference each of the paragraphs set forth above as though fully set forth herein.

160.    Fiat Chrysler expressly warranted to persons purchasing the Class Vehicles that they were what they were represented to be.

161.    Plaintiff and members of the Class, in particular, were induced by these express warranties to use and purchase Fiat Chrysler's products. Plaintiff and the Class directly and indirectly believed and relied upon Fiat Chrysler's express warranties, and they induced Plaintiff and the Class to select the Class Vehicles.

162.    The above referenced warranties were breached by Fiat Chrysler as its products were not fit for the use and purpose expressly warranted by Fiat Chrysler.

163.    Plaintiff and the Class have suffered injury in fact and have suffered an economic loss by, *inter alia*: (a) leasing or purchasing a product they never would have leased or purchased; (b) leasing and/or purchasing an inferior product whose nature and characteristics render it of a lesser value than represented; (c) incurring costs for diminished resale value of the products purchased; (d) leasing and/or purchasing a product that poses a danger to the health and safety of not only the purchaser but also the public; (e) incurring increased costs to repair the products purchased; and (f) incurring costs from loss of use. Plaintiff and the Class therefore request that the Court issue an injunction restraining and enjoining Fiat Chrysler from sending or transmitting false and misleading advertising to individuals or entities concerning the environmental and other qualities of the vehicles from Fiat Chrysler.

32
CLASS ACTION COMPLAINT

1

2

**EIGHTH CAUSE OF ACTION**
**Deceit by Concealment**
**(By Plaintiff and the California Class against the Fiat Chrysler defendants)**

3

164.    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

4

5

6

165.    At all times relevant, Fiat Chrysler was and is under a duty to communicate with Plaintiff and the Class in good faith and to provide to Plaintiff and the Class all material facts within Fiat Chrysler's knowledge.

7

8

9

10

166.    Fiat Chrysler deceived Plaintiff and the Class by concealing from them the true facts concerning the Class Vehicles that Fiat Chrysler was obligated to disclose. As set forth above, Fiat Chrysler knew the representations made about the Class Vehicles' emissions and performance were untrue or misleading, but concealed those facts from Plaintiff and the Class.

11

12

13

167.    Fiat Chrysler knew that these omissions were material and that Plaintiff and the Class would rely on these omissions to their detriment. Plaintiff and the Class did in fact rely on these omissions such that had they known the true facts, they would have acted differently.

14

15

168.    As a result of the deceit by concealment by Fiat Chrysler, Plaintiff and the Class suffered the injuries and damages set forth above.

16

17

18

**NINTH CAUSE OF ACTION**
**Violation of the Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of Plaintiff and the California Class against the Fiat Chrysler defendants)**

19

169.    Plaintiff incorporates all previous factual allegations as if fully set forth herein.

20

170.    Defendants are "persons" as defined by Cal. Civ. Code § 1761(c).

21

171.    Plaintiff and Class members are "consumers," as defined by Cal. Civ. Code § 1761(d).

22

23

172.    The vehicles that Defendants marketed and sold constitute "goods" as defined by Cal. Civ. Code § 1761(a) and (b).

24

25

173.    Plaintiff's and Class members' purchases of the vehicles constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

26

27

174.    Plaintiff's and Class members' purchases of the vehicles were for personal, family, and household purposes as meant by Cal. Civ. Code § 1761(d).

28

175.   Venue is proper under Cal. Civ. Code § 1780(d) because a substantial portion of the transactions at issue occurred in this District.  An affidavit establishing that this Court is the proper venue for this action is attached below.

176.   Defendant deceived consumers in that it misrepresented that the vehicles used "clean diesel" technology as alleged above, when in fact they were not.

177.   Defendant's misrepresentations, active concealment, and failures to disclose violated the CLRA in the following manner:

a.   In violation of Section 1770(a)(5), Defendant misrepresented that the vehicles had characteristics, benefits, or uses that they did not have;

b.   In violation of Section 1770(a)(7), Defendant misrepresented that the vehicles were of a particular standard, quality, and/or grade when they were of another;

c.   In violation of Section 1770(a)(9), Defendant advertised the vehicles with an intent not to sell them as advertised;

d.   In violation of Section 1770(a)(14), Defendant misrepresented that the vehicles conferred or involved rights, remedies, or obligations that they did not have; and

e.   In violation of Section 1770(a)(16), Defendant misrepresented that the vehicles were supplied in accordance with previous representations when they were not.

178.   Defendant's misrepresentations and nondisclosures regarding the vehicles never disclosed at the time of purchase were material to Plaintiff and Class members because a reasonable person would have considered them important in deciding whether or not to purchase the vehicles and because Defendant had a duty to disclose the truth.

179.   Plaintiff and Class members relied upon Defendant's material misrepresentations and nondisclosures, and had Plaintiff and Class members known the truth they would have acted differently.

180.   As a direct and proximate result of Defendant's material misrepresentations and nondisclosures, Plaintiff and the Class have been irreparably harmed.

CLASS ACTION COMPLAINT

181.    On behalf of the Class, Plaintiff seeks injunctive relief in the form of an order enjoining Defendant from making such material misrepresentations and failing to disclose or actively concealing its aforementioned practices.  Plaintiff also seeks attorneys' fees and costs.

182.    In accordance with Cal. Civ. Code § 1782(a), on March 6, 2017, Plaintiff's counsel served Defendants with notice of the CLRA violations by certified mail, return receipt requested.

183.    If Defendants fail to provide appropriate relief for the CLRA violations within 30 days of receipt of Plaintiff's notification letter, Plaintiff will amend this complaint to seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for relief as follows:

1.    An Order appointing Plaintiff to represent the proposed California Class and Nationwide RICO Class pursuant to Fed. R. Civ. P. 23(a) and designating their counsel as Class Counsel;

2.    An Order enjoining Fiat Chrysler from future violations of the CLRA, 16 C.F.R. section 259.2, Business & Professions Code section 17200, *et seq.*, Business & Professions Code section 17500, *et seq.*, as alleged herein;

3.    An Order awarding Plaintiff and the Class restitution and/or disgorgement;

4.    An Order awarding Plaintiff and the Class compensatory damages;

5.    An Order awarding Plaintiff and the Class punitive damages;

6.    An Order awarding Plaintiff attorneys' fees, expert witness fees and other costs, including pre-judgment and post-judgment interest thereon to the extent allowed by law; and

7.    Such other relief as the Court deems proper.

CLASS ACTION COMPLAINT

1

## DEMAND FOR JURY TRIAL

2          Plaintiff, on behalf of himself and the proposed Class, hereby demands a trial by jury as to all

3   matters so triable.

4                                                    Respectfully submitted,

5                                                    **AHDOOT & WOLFSON, PC**

6

7   Dated: March 6, 2017

8                                                    Tina Wolfson, SBN 174806
                                                     *twolfson@ahdootwolfson.com*
9                                                    Robert Ahdoot, SBN 172098
                                                     *rahdoot@ahdootwolfson.com*
10                                                   AHDOOT & WOLFSON, PC
                                                     1016 Palm Avenue
11                                                   West Hollywood, California 90069
                                                     Tel: (310) 474-9111; Fax: (310) 474-8585
12

13                                                   Daniel K. Bryson*
                                                     N.C. Bar No.: 15781
14                                                   J. Hunter Bryson*
                                                     N.C. Bar No.: 50602
15                                                   WHITFIELD BRYSON & MASON LLP
                                                     PO Box 12638
16                                                   Raleigh, NC 27605
                                                     Telephone: 919-600-5000
17                                                   Facsimile: 919-600-5035
                                                     Email: dan@wbmllp.com
18                                                   Email: hunter@wbmllp.com

19

20                                                   *Pro hac vice* applications forthcoming

21                                                   *Counsel for Plaintiff*

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

**AFFIDAVIT OF TINA WOLFSON**

I, Tina Wolfson, declare as follows:

1.    I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiff John Milligan ("Plaintiff") in this action.  I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California.  This declaration is made pursuant to California Civil Code section 1780(d).  I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.    Venue is proper in this Court because Plaintiff suffered injuries as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendant (1) is authorized and registered to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the distribution and sale of its products in this District and (2) is subject to personal jurisdiction in this District.

3.    Plaintiff is a resident of Mendocino County, California.

4.    Defendant FCA US LLC is a Delaware limited liability company (and the domestic subsidiary of Defendant Fiat Chrysler Automobiles, N.V.) with its principal place of business in Auburn Hills, Michigan.

5.    Defendant Robert Bosch LLC is a Delaware limited liability company (and the domestic subsidiary of Robert Bosch GMBH) with its principal place of business in Farmington Hills, Michigan.

I declare under penalty of perjury under the laws of the United States and the State of California this 6th day of March, 2016 in West Hollywood, California that the foregoing is true and correct.

_____
Tina Wolfson

37

CLASS ACTION COMPLAINT